No. 21-3218

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

ANTHONY J. HAMPTON,

Plaintiff-Appellant,

vs.

BAKERY, CONFECTIONERY &
TOBACCO WORKERS AND GRAIN
MILLERS INTERNATIONAL UNION
OF AMERICA, LOCAL 218, AFL-CIO,

Defendant-Appellee
_____

Appeal from the United States District Court
for the District of Kansas

The Honorable Toby Crouse
District Court No. 21-CV-02010-TC-TJT
_____

APPELLANT'S OPENING BRIEF
_____


ALAN V.  JOHNSON, KS. #9992                    ORAL ARGUMENT
SLOAN, EISENBARTH, GLASSMAN,                    NOT REQUESTED
 McENTIRE & JARBOE, L.L.C.
534 S. Kansas Avenue, Suite 1000
TOPEKA, KS  66603
PHONE:     785/357-6311
FAX:         785/357-0152

# TABLE OF CONTENTS

**STATEMENT OF JURISDICTION** ................................................1

**STATEMENT OF ISSUES** ........................................1

**STATEMENT OF THE CASE** ........................................................2

    **A.** **The Factual Allegations Set Forth in
Mr. Hampton's Complaint** ........................................2

    **B.** **The Claims Set Forth in Mr. Hampton's Complaint** .......... 11

    **C.** **The District Court's Dismissal
of Mr. Hampton's Complaint** ............................... 12

**ARGUMENTS AND AUTHORITIES** ........................................... 14

    Doe v. Sch. Dist. No. 1,
        970 F.3d 1300, 1309 (10th Cir. 2020, quoting
    Farmer v. Kan. State Univ.
        918 F.3d 1094, 1102 (10th Cir. 2019 ...................................... 14

    Ashcroft f. Iqbal,
        556 U.S. 662, 678 (2009) ........................................ 14

    Khalik v. United Air Lines,
        671 F.3d 1188, 1191 (10th Cir. 2012) .................................... 15

    Gerson v. Logan River Acad.,
        11 F.4th 1195, 1210 (10th Cir. 2021) ....................................... 15

**I.** **Mr. Hampton's Complaint States a Facially Plausible
Claim Against Local 218 For Breach of the Duty of
Fair Representation** ........................................................ 15

    Schwartz v. Bhd. Of Maint. of Way Emples,
        264 F.3d 1181, 1185 (10th Cir. 2001) .................................... 15

    Vaca v. Sipes, 386 U.S. 171, 182 (1967) ......................................... 16

Webb v. ABF Freight Sys., Inc.,
    155 F.3d 1230, 1238 (10th Cir. 1998) ..................................... 16

A.    **Conduct By Local 218 Breaching The Duty
      Of Fair Representation**........................................................... 17

Air Line Pilots Ass'n, Int'l Union,
    499 U.S. 65, 67 (1991) ............................................................ 17

Aguinaga v. United Food & Commercial Workers Int'l Union,
    993 F.2d 1463, 1470 (10th Cir. 1993) ..................................... 17

Lampkin v. Int'l Union United Auto., Aero & Agric. Implement
Workers, Local No. 1093,
    154 F.3d 1136, 1144-45 (10th Cir. 1998) .................................20

Beavers v. United Paperworkers Int'l Union, Local 1741,
    72 F.3d 97, 100 (8th Cir. 1995) ............................................... 20

B.    **Damage Caused By Local 218's Breach of its Duty of
      Fair Representation**................................................................ 22

Hines v. Anchor Motor Freight, Inc.,
    424 U.S. 554, 567 (1976) ........................................................ 22

C.    **Violation of the Collective Bargaining Agreement
      By Frito-Lay** .......................................................................... 22

Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015)......... 24

Foster v. Mt. Coal co., LLC,
    830 F.3d 1178, 1186-87 (10th Cir. 2016) ................................. 25

Anderson v. Coors Brewing Co.,
    181 F.3d 1171, 1178 (10th Cir. 1999) ..................................... 25

II.   **Mr. Hampton's Complaint States A Facially Plausible Claim
      Against Local 218 For Race Discrimination In Violation
      Of § 1981** ........................................................................... 25

Jara v. Standard Parking,
    701 Fed. Appx. 733, 736 (10th Cir. 2017) ................................ 25

Barlow v. C.R. England, Inc.,
  703 F.3d 497, 505 (10th Cir. 2012) ......................................... 25

Hampton v. Dillard Dep't Stores, Inc.,
  247 F.3d 1091, 1101-02 (10th Cir. 2001) ................................. 25

McDonnell Douglas Corp. v. Green,
  411 U.S. 792 (1973) ................................................................. 27

**A.    The McDonnell Douglas Burden-Shifting Framework** ...... 27

Kendrick v. Penske Transp. Servs.,
  220 F.3d 1220, 1225-26 (10th Cir. 2000) ................................. 27

Plotke v. White, 405 F.3d 1092, 1100 (10th Cir. 2005) ..................... 28

Sorbo v. UPS, 432 F.2d 1169 (10th Cir. 2005) ................................. 28

Hysten v. Burlington N. & Santa Fe Ry. Co.,
  296 F.3d 1177, 1181 (10th Cir. 2002) ...................................... 28

**B.    Mr. Hampton's Prima Facie Case of Race
       Discrimination Against Local 218** ........................................ 29

**CONCLUSION** .......................................................................... 31

**CERTIFICATE OF COMPLIANCE WITH RULE 32** .................................. 31

**CERTIFICATE OF DIGITAL SUBMISSION** .............................................. 31

**ORAL ARGUMENT** ................................................................... 32

**CERTIFICATE OF SERVICE** ..................................................................... 33

**APPENDIX:  Memorandum and Order Filed on October 22, 2021**

## PRIOR APPEALS

There are no prior or related appeals to this action.

## STATEMENT OF JURISDICTION

The plaintiff/appellant, Anthony J. Hampton, was formerly employed by Frito-Lay, Inc., and he was a member of the bargaining unit represented by the defendant/appellee, Bakery, Confectionery & Tobacco Workers and Grain Millers International Union of America, Local 218, AFL-CIO ("Local 218").  Local 218 represented Mr. Hampton in regard to his suspension and termination from employment by Frito-Lay.  Mr. Hampton filed this lawsuit against Local 218, asserting two claims:  (1) breach of the duty of fair representation; and (2) race discrimination in violation of 42 U.S.C. § 1981.  (Aplt. App. at 7-20)

On October 22, 2021, the district court entered a memorandum and order granting Local 218's motion to dismiss under Fed.  Rule Civ. Pro. 12(b)(6), concluding that Mr. Hampton's complaint failed to state plausible claims for either breach of the duty of fair representation, or violation of § 1981.  (Aplt. App. at 62-70)  On October 26, 2021, the district court entered a final judgment in favor of Local 218.  (Aplt. App. at 71)  On November 24, 2021, Mr. Hampton filed a notice of appeal pursuant to Fed. Rule App. Pro. 4(a)(1).  (Aplt. App. at 72)  The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Does Mr. Hampton's complaint state a facially plausible claim against Local 218 for breach of the duty of fair representation?

2.    Does Mr. Hampton's complaint state a facially plausible claim against Local 218 for race discrimination in violation of 42 U.S.C. § 1981?

## STATEMENT OF THE CASE

### A.  The Factual Allegations Set Forth In Mr. Hampton's Complaint

Mr. Hampton is African American.  In June of 2010, Mr. Hampton was hired by Frito-Lay to work in its Topeka plant.  During his employment, Mr. Hampton worked in several departments in Frito-Lay's Topeka plant; in 2018, Mr. Hampton was working in the Receiving Department.  In February of 2018, George "Sam" Kistler began coming to the office of the Receiving Department, where Mr. Hampton worked.  Mr. Kistler is employed in the Maintenance Department in Frito-Lay's Topeka plant, and he had no work-related reason to visit the office of the Receiving Department.  By the spring of 2018, Mr. Kistler was visiting the office of the Receiving Department two (2) to six (6) times per week. (Aplt. App. at 8)

During his frequent visits to the office of the Receiving Department, Mr. Kistler expressed offensive and inflammatory comments and opinions to Mr. Hampton, or in Mr. Hampton's presence.   The comments and opinions expressed by Mr. Kistler related to a variety of topics, including race, Mr. Kistler's ownership of guns, and his service in the military.  The comments and opinions expressed by Mr. Kistler created a racially intimidating, hostile, and offensive work environment for Mr. Hampton.  (Aplt. App. at 8)

On October 5, 2018, Mr. Kistler make another one of his unwelcome visits to the Receiving office.  Mr. Hampton opened the door leading out of the Receiving office, and asked Mr. Kistler to leave.  Mr. Kistler responded that he

wasn't scared of Mr. Hampton.   Mr. Hampton replied that he didn't want Mr. Kistler to be scared of him, he just wanted Mr. Kistler to leave.  As Mr. Kistler was leaving the Receiving office, he asked Mr. Hampton if he was going to "rat out" Mr. Kistler.  Mr. Hampton responded that he wouldn't have to do that, because Mr. Kistler's managers already knew about his unwelcome visits to the Receiving office.  At no time during this incident did Mr. Hampton threaten or strike Mr. Kistler.  (Aplt. App. at 9)

On October 6, 2018, Mr. Hampton prepared a written "Statement of Events," which described the history of Mr. Kistler's unwelcome visits to the Receiving office, and the incident between Mr. Hampton and Mr. Kistler on October 5, 2018.  Mr. Hampton delivered copies of his written statement to his direct supervisor, Ryan McGivern, and to the Human Resources Director at Frito-Lay's Topeka plant.  In his statement, Mr. Hampton asserted that during the incident with Mr. Kistler, "[a]t no time did I threaten or strike Sam."  In the last paragraph of his statement, Mr. Hampton further asserted:

> I am prepared to seek relief and protection(s) from Shawnee County District Courts.  Sam [Kistler] is a gun owner and has already expressed concern on whether or not I would 'rat him out.'  Frito-Lay's policies haven't stopped him.  While at work, I'm concerned he will come in with a weapon.

(Aplt. App. at 9-10)

On October 12, 2018, Mr. Hampton was informed by Mr. McGivern that he was being suspended from his employment by Frito-Lay, without pay, pending an

investigation.   Mr. McGivern did not give Mr. Hampton any reason for his suspension.   Mr. Hampton filed a grievance contesting his suspension.   (Aplt. App. at 10)

For a number of years, Frito-Lay and Local 218 had entered into a series of Collective Bargaining Agreements, which governed the relations between Frito-Lay, Local 218, and the production and maintenance employees at Frito-Lay's plant in Topeka.   One of these Collective Bargaining Agreements (hereinafter "the CBA") was effective between September 16, 2017, and September 12, 2020.  (Aplt. App. at 10)

Article 3 of the CBA prohibits discrimination by Frito-Lay or the Union. Article 3 state in relevant part:

> The Company and the Union agree that they will not discriminate against any employee or prospective employee.   Frito-Lay is dedicated to the achievement of equality of opportunity for all of its associates and applicants for employment.   This broadly interpreted policy prohibits discrimination on the basis of race, color, religion, sex, sexual orientation, gender identity, age, national origin, disability, veteran status or any protected category under state, local or federal law.

(Aplt. App. at 10)

Article 5 of the CBA states that Frito-Lay may make such rules and regulations as it may "deem best for the purposes of maintaining order, safety, and/or effective operations of its business, and . . . to require compliance therewith by employees."   Pursuant to Article 5 of the CBA, Frito-Lay has implemented the Topeka Plant Work Rules (hereinafter "Work Rules").   The

Work Rules are designed to "define and protect the rights, safety and welfare of all employees," and to "detail appropriate guidelines for addressing inappropriate conduct." (Aplt. App. at 10-11)

The Work Rules are divided into two sections. The first section sets forth examples of behavior for which an employee can be progressively disciplined through a four-step procedure up to termination. The second section provides examples of rule violations that could result in immediate termination from employment. (Aplt. App. at 11)

Article 11 of the CBA establishes a three-step grievance procedure for resolving any dispute involving application or interpretation of the CBA. If the dispute involves the termination of an employee, the first two steps are skipped, and the dispute progresses to the third step. The third step of the grievance procedure requires that a "Leadership Team member . . . shall . . . meet with the Chief Steward and the Local Union representative in an effort to resolve the dispute." (Aplt. App. at 11)

During October of 2018, the HR Department at the Topeka plant investigated the incident which had occurred on October 5 between Mr. Hampton and Mr. Kistler. This investigation was conducted primarily by Anthony Diers, who interviewed both Mr. Hampton and Mr. Kistler. During his investigation with Mr. Diers, Mr. Kistler claimed that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him. (Aplt. App. at 11)

During his investigation, Mr. Diers also interviewed two of Mr. Hampton's co-workers in the Receiving Department:  Devonta Jones and Karina Ramos-Aguirra.  Both of these co-workers had witnessed the October 5 incident between Mr. Hampton and Mr. Kistler, and both of these co-workers eventually signed written statements regarding what they had observed.  (Aplt. App. at 11)

On or about October 31, 2018, Mr. Diers prepared a report which summarized the results of his investigation in regard to the October 5 incident between Mr. Hampton and Mr. Kistler.  Mr. Diers' report stated in relevant part:

> Based on these findings, this claim [by Mr. Kistler] is substantiated.  3 of the 4 individuals involved in the incident in question confirmed there was physical contact inflicted on Kistler by Hampton in the workplace. Working in lock-step with Legal and Labor, it was determined that – based on a zero-tolerance policy when it comes to physical altercations (workplace violence) – Hampton should be separated from the organization.

(Aplt. App. at 12)

However, Mr. Diers' report further stated that a severance agreement would be offered to Mr. Hampton.  The report explained:

> Given potential risk – as Hampton had no prior progressive discipline for performance, and given Hampton's being less than 9 months away from having access to his pension – it was determined to opt for a "severance" offer, wherein Hampton would not return to work, but would remain eligible for benefits until his 55th birthday, at which point he would have access to his pension, and would also effectively be totally separated from the organization.  The Labor team has drafted a document, and once finalized the Topeka HR team will

> work with the union to present this document to
> Hampton.

(Aplt. App. at 12)

On November 1, 2018, the HR Department at the Topeka plant offered Mr. Hampton, through Local 218, a severance agreement, which was entitled "Confidential Transition Agreement and General Release" (hereinafter "Transition Agreement"). This Transition Agreement provided, in relevant part, that Mr. Hampton would not return to work at the Topeka plant, but he would remain eligible for employee benefits from Frito-Lay until his 55th birthday, at which point he would be eligible for his pension benefits. (Aplt. App. at 12)

Also on November 1, 2018, Local 218 made a written request for information from the HR Department at the Topeka plant in regard to the suspension of Mr. Hampton from his employment. This request for information included the following:

> 1. Copies of all written and verbal statements provided to or taken by the company, investigation notes taken and communication made by the company representatives during investigations related to Tony Hampton since May 1, 2018.
>
> . . . .
>
> 5. Copies of any information not requested that was used to prepare the 'Confidential Transition Agreement and General Release' as presented to the suspended employee and the bargaining representative on November 1, 2018.

(Aplt. App. at 13)

On November 13, 2018, Mr. Diers sent a letter to Local 218 in response to its request for information regarding the suspension of Mr. Hampton.  Mr. Diers attached to his letter "documents that we have collected which match your request."  These documents included written statements signed by Mr. Jones and Ms. Ramos-Aguirra regarding the October 5 incident between Mr. Hampton and Mr. Kistler.  These statements supported Mr. Kistler's allegation that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him.  (Aplt. App. at 13)

After receiving the documents from Mr. Diers on November 13, 2018, Local 218 failed to show Mr. Hampton the written statements signed by Mr. Jones and Ms. Ramos-Aguirra.  Local 218 further failed to advise Mr. Hampton that these statements supported Mr. Kistler's allegation that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him.  As a result, Mr. Hampton declined to accept the Transition Agreement which had been offered to him by Frito-Lay.  (Aplt. App. at 13-14)

On November 28, 2018, Chris Emeish, who was then the Processing Manager at Frito-Lay's Topeka plant, sent a letter to Mr. Hampton, informing Mr. Hampton that he was being terminated from his employment by Frito-Lay.  Mr. Emeish's letter stated in part:

> This letter is intended to inform you that your employment with Frito Lay, Inc. has been terminated effective immediately for violating the Topeka Plant Work Rules #11, 2nd set, and #15, 2nd Set.

> On October 5, 2018, you were involved in an incident with a fellow Frito-Lay Topeka employee. Upon investigating, it was determined that you had used profanity toward this team member, and used your person to physically contact this team member. These incidents are in violation of the…Topeka Plant Work Rules….

(Aplt. App. at 14)

Mr. Hampton believed that the allegations in Mr. Emeish's letter of November 28, 2018, were false. Accordingly, Mr. Hampton filed a grievance contesting his termination. On December 6, 2018, Mr. Hampton and his Union representatives met with Mr. Emeish to discuss Mr. Hampton's grievance over his termination. Mr. Hampton told Mr. Emeish that he did not have any physical contact with Mr. Kistler during the incident on October 5, 2018. Mr. Emeish stated that he would take Mr. Hampton's grievance under advisement. (Aplt. App. at 14)

On January 7, 2019, Mr. Emeish sent a letter to Local 218, denying Mr. Hampton's grievance regarding his termination. Mr. Emeish's letter stated in part:

> On 12/06/18, a 3rd Step Grievance meeting was held between the Company and Union with Tony Hampton present. Per the investigation after the 3rd step meeting referenced above, there were no subsequent findings to overturn the termination, therefore this grievance is denied. (Updated: 1/7/19)

The Union chose not to arbitrate Mr. Hampton's grievance over his termination.

(Aplt. App. at 14-15)

On September 12, 2019, Mr. Hampton filed an administrative charge against Frito-Lay with the Equal Employment Opportunity Commission (hereinafter "EEOC"), asserting that his discharge from employment was racially discriminatory.  On September 25, 2019, that EEOC issued a right-to-sue letter to Mr. Hampton in regard his claim against Frito-Lay that his discharge from employment was racially discriminatory.  (Aplt. App. at 15)

On November 14, 2019, Mr. Hampton (through his attorney) requested copies of all documents which Local 218 had received from Frito-Lay, in response to Local 218's written request for information to Frito-Lay on November 1, 2018, regarding Mr. Hampton's suspension from employment.  Local 218 refused to provide any documents to Mr. Hampton.  (Aplt. App. at 15)

On December 23, 2019, Mr. Hampton filed a lawsuit in the United States District Court  of Kansas against Frito-Lay and Mr. Kistler, Case No. 19-CV-2776, alleging racial discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  In the course of discovery in Case No. 19-CV-2776, Mr. Hampton served a subpoena on Local 218, requesting copies of all documents which Local 218 had received from Frito-Lay, in response to Local 218's written request for information to Frito-Lay on November 1, 2018, regarding Mr. Hampton's suspension from employment. (Aplt. App. at 15-16)

On July 13, 2020, Mr. Hampton received copies of the documents from Local 218 which were responsive to his subpoena in Case No. 19-CV-2776.

10

These documents included the written statements by Mr. Jones and Ms. Ramos-Aguirra regarding the incident on October 5, 2018, between Mr. Hampton and Mr. Kistler.  At this point in time, Mr. Hampton first learned or discovered that Mr. Jones and Ms. Ramos-Aguirra had both signed written statements which supported Mr. Kistler's allegation that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him.  (Aplt. App. at 16)

In October of 2020, Mr. Hampton settled his claims of racial discrimination against Frito-Lay and Mr. Kistler, and Case No. 19-CV-2776 was eventually dismissed.  (Aplt. App. at 16)

## B.  <u>The Claims Set Forth In Mr. Hampton's Complaint</u>

Mr. Hampton asserts two claims or theories of recovery in his complaint. The first claim is that Local 218 breached its duty of fair representation.  This claim is based on the following contentions:

Local 218 breached its duty of fair representation by representing Mr. Hampton in the grievance procedure in an arbitrary and racially discriminatory manner, and in bad faith.  Specifically, Local 218 failed to show Mr. Hampton the written statements by Mr. Jones and Ms. Ramos-Aguirra regarding the incident on October 5, 2018, between Mr. Hampton and Mr. Kistler; and further failed to advise Mr. Hampton that these statements supported Mr. Kistler's allegation that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him.  (Aplt. App. at 16)

Local 218's breach of its duty of fair representation seriously undermined the integrity of the grievance procedure and the arbitral process.  If Local 218 had not breached its duty of fair representation, Mr. Hampton would have agreed to sign the Transition Agreement which had been offered to him by Frito-Lay. (Aplt. App. at 17)

Mr. Hampton's second claim is that Local 218 discriminated against him because of his race, in violation of 42 U.S.C. § 1981.  This claim is based on the following contentions:

Local 218 discriminated against Mr. Hampton because of his race by impairing his right to make and enforce a contract.  Specifically, the Union discriminated against Mr. Hampton by failing to reasonably advise him that the written statements by both Mr. Jones and Ms. Ramos-Aguirra supported Mr. Kistler's allegation that on October 5, 2018, Mr. Hampton had used profanity toward him, and had made physical contact with him.  The Union's discriminatory conduct caused Mr. Hampton to decline to sign the Transition Agreement which had been offered to him by Frito-Lay.  (Aplt. App. at 17)

As a result of the Union's discriminatory conduct, Mr. Hampton has suffered damages in the form of lost past and future pension benefits to which he would have been entitled under the Transition Agreement.  (Aplt. App. at 17)

## C. The District Court's Dismissal of Mr. Hampton's Complaint

The district court dismissed Mr. Hampton's complaint for failure to state any plausible claims for relief.  In regard to Mr. Hampton's claim that Local 218

breached its duty of fair representation, the district court first concluded that Mr.

Hampton has failed to allege sufficient facts to suggest arbitrary, discriminatory,

or bad-faith conduct, explaining:

> [The] complaint alleges few facts about the Union's involvement in Hampton's grievance process with Frito-Lay. . . .  Without additional facts, his claim rests on the Union's knowledge of the corroborating statements and its decision not to volunteer that information to Hampton and advise accordingly.  This is not enough to suggest arbitrary, discriminatory, or bad-faith conduct.

(Aplt. App. at 66)

The district court further concluded that Mr. Hampton has failed to allege

sufficient facts to support the third element of a hybrid Section 301/fair

representation claim - - that Frito-Lay breached the collective bargaining

agreement when it discharged Hampton.  The district court stated:

> The parties' briefs do not detail what constitute[s] a breach of the collective bargaining agreement. Hampton argues that it is enough that the collective bargaining agreement prohibited discrimination and that he sued Frito-Lay for racial discrimination. . . .  To state a plausible claim, Hampton needed to support his position with more than just general, conclusory allegations.

(Aplt. App. at 68)

In regard to Mr. Hampton's claim under § 1981 that Local 218

discriminated against him because of his race, the district court concluded that

Mr. Hampton has failed to allege sufficient facts to suggest that his race was the

but-for cause of his injury, explaining:

> Hampton has not plausibly alleged but-for causation. Other than stating that he is African American, the Complaint is devoid of factual allegations that the Union treated Hampton differently from similarly situated employees based on his race. Indeed, the only time race is mentioned in conjunction with Union conduct is where Hampton conclusorily recites his claim. . . . Bald claims of race discrimination, without factual support, are not enough.

(Aplt. App. at 69)

## ARGUMENTS AND AUTHORITIES

This court reviews de novo the district court's ruling on a motion to dismiss under Rule 12(b)(6), "accepting as true all well pled facts and viewing those facts in the light most favorable to Plaintiffs." Doe v. Sch. Dist. No. 1, 970 F.3d 1300, 1309 (10th Cir. 2020), quoting Farmer v. Kan. State Univ., 918 F.3d 1094, 1102 (10th Cir. 2019).

A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is "plausible on its face" if its factual allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678.

This court has interpreted this standard to be "a middle ground between heightened fact pleading . . . and allowing complaints that are not more than

labels and conclusions or a formulaic recitation of the elements of a cause of action."  Doe, 970 F.3d at 1309, quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  In Khalik, this court went on to explain:

> Further, we have noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'  Kansas Penn [Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2008). . . .
>
> In other words, Rule 8(a)(2) still lives.  There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements. . . . [U]nder Rule 8, 'specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'  [Citations omitted.]

671 F.3d at 1191-92.  Emphasis added.  See also Gerson v. Logan River Acad., 11 F.4th 1195, 1210 (10th Cir. 2021)  ["The nature and specificity of the allegations required to state a plausible claim will vary on context."]

 For the reasons discussed below, Mr. Hampton's complaint states facially plausible claims against Local 218 for breach of the duty of fair representation, and for race discrimination in violation of § 1981, because the complaint "give[s] the defendant fair notice of what the . . . [claims are] and the grounds upon which [they] rest."  Khalik, 671 F.3d at 1192.

### I.  Mr. Hampton's Complaint States a Facially Plausible Claim Against Local 218 For Breach Of The Duty of Fair Representation

 "The duty of fair representation arises from a union's legal status as the sole and exclusive bargaining representative of employees' interests."  Schwartz v. Bhd. of Maint. of Way Emples., 264 F.3d 1181, 1185 (10th Cir. 2001).  By

design, the duty of fair representation "stands as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." Schwartz, 264 F.3d at 1185, quoting Vaca v. Sipes, 386 U.S. 171, 182 (1967).

A plaintiff may bring a claim against a union for breach of its duty of fair representation in combination with a claim against an employer for breach of the collective bargaining agreement. This is a so-called "hybrid" action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. "[I]t combines two completely independent causes of action, the first against the [employer] company for breach of the contract (a standard § 301 claim) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee). Webb v. ABF Freight Sys., Inc., 155 F.3d 1230, 1238 (10th Cir. 1998). However, the plaintiff "need not sue both his union and former employer in the same case, and he may choose to seek damages against only one of the potential defendants, but in any event, 'the case he must prove is the same whether he sues one, the other, or both.'" Webb, 155 F.3d at 1239. Emphasis added.

In order to prevail in an action under § 301 of the Labor Management Relations Act, a plaintiff must prove three elements:

> (1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of

the arbitration process; and (3) A violation of the collective bargaining agreement by the company.

Webb, 155 F.3d at 1239.

### A. **Conduct By Local 218 Breaching The Duty of Fair Representation**

A union is liable for breach of its duty of fair representation if its conduct is "arbitrary, discriminatory, or in bad faith." Schwartz, 264 F.3d at 1185, quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991). See also Aguinaga v. United Food & Commercial Workers Int'l Union, 993 F.2d 1463, 1470 (10th Cir. 1993). The duty of fair representation "applies to all union activity." Schwartz, 264 F.3d at 1185, quoting Air Line Pilots Ass'n, Int'l, 499 U.S. at 67, 77.

Here, Mr. Hampton alleges that Local 218 "breached its duty of fair representation by representing Mr. Hampton in the grievance procedure in an arbitrary and racially discriminatory manner, and in bad faith." (Aplt. App. at 16, ¶ 37) The context for this allegation consists of a sequence of events beginning with Mr. Hampton's suspension from employment by Frito-Lay on October 12, 2018, and culminating in his termination. This suspension arose out of an incident between Mr. Hampton and Mr. Kistler, which occurred on October 5, 2018. (Aplt. App. at 9-10, ¶¶ 9-12)

During October of 2018, the HR Department at Frito-Lay's Topeka plant investigated the incident which had occurred on October 5 between Mr. Hampton and Mr. Kistler. During this investigation, Mr. Kistler contended that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with

him. Mr. Kistler's version of the October 5 incident was supported by the written statements of two co-workers who had witnessed the October 5 incident: Devonta Jones and Karina Ramos-Aguirra. (Aplt. App. at 11, ¶¶ 18-19)

Based on the statements of Mr. Jones and Ms. Ramos-Aguirra, Frito-Lay determined that Mr. Hampton had violated the company's workplace violence policy, and therefore he should be separated from his employment. However, Frito-Lay further determined that Mr. Hampton should be offered a severance option, wherein he would not return to work, but he would remain eligible for employee benefits from the company until his 55th birthday, at which point he would be eligible for his pension benefits.  (Aplt. App. at 12, ¶¶ 20-21)

On November 1, 2018, Frito-Lay offered Mr. Hampton, through Local 218, a severance agreement, entitled "Confidential Transition Agreement and General Release." This Transition Agreement provided, in relevant part, that Mr. Hampton would not return to work at Frito-Lay's Topeka plant, but he would remain eligible for employee benefits from Frito-Lay until his 55th birthday, at which point he would be eligible for his pension benefits.  Local 218 was a party to this proposed Transition Agreement, and it was required to sign the agreement. (Aplt. App. at 12, ¶ 22)

Also on November 1, 2018, Local 218 made a written request for information from Frito-Lay.  This request included "copies of all written and verbal statements provided to or taken by the company . . . related to Tony Hampton since May 1, 2018."  (Aplt. App. at 13, ¶ 23)  On November 13, 2018, Frito-Lay

responded to Local 218's requests for information and provided "documents which we have collected which match your request."  These documents included written statements signed by Mr. Jones and Ms. Ramos-Aguirra regarding the October 5 incident between Mr. Hampton and Mr. Kistler. These statements supported Mr. Kistler's contention that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him. ( Aplt. App. at 13, ¶ 24)

Based on this sequence of events, Mr. Hampton alleges the following breach of its duty of fair representation by Local 218:

> The Union breached its duty of fair representation by representing Mr. Hampton in the grievance procedure in an arbitrary and racially discriminatory manner, and in bad faith. Specifically, the union failed to show Mr. Hampton the written statements by Mr. Jones and Ms. Ramos-Aguirra regarding the incident on October 5, 2018, between Mr. Hampton and Mr. Kistler; and further failed to advise Mr. Hampton that these statements supported Mr. Kistler's allegation that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him.

(Aplt. App. at 16, ¶ 37)

Mr. Hampton's allegations state a plausible claim of "arbitrary" conduct by Local 218. "A union's actions are arbitrary only if, 'in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational.'"  Aguinaga, 993 F.2d at 1470, quoting Air Line Pilots Ass'n, Int'l, 499 U.S. at 67.  This court has held that giving "irrational" advice to union members on a material matter constitutes

arbitrary conduct.  Schwartz, 264 F.3d at 1186.  Here, Mr. Hampton alleges that Local 218 gave him no advice regarding the written statements made by Mr. Jones and Ms. Ramos-Aguirra, or the consequent advisability of signing the proposed Transition Agreement.  This allegation likewise states a plausible claim of arbitrary conduct by Local 218, because giving no advice to a union member on a material matter is as unreasonable as giving irrational advice.

This court has also held that processing a grievance in a "perfunctory" manner constitutes a specific type of arbitrary conduct by a union. See Webb, 155 F.3d at 1239-40; Lampkin v. Int'l Union United Auto., Aero & Agric. Implement Workers, Local No. 1093, 154 F.3d 1136, 1144-45 (10th Cir. 1998). "Perfunctory" processing of a grievance means that "the union acted without concern or solicitude, or gave a claim only cursory attention."  Webb, 155 F.3d at 1240, quoting Beavers v. United Paperworkers Int'l Union, Local 1741, 72 F.3d 97, 100 (8th Cir. 1995)

Here, again, Mr. Hampton alleges that Local 218 gave him no advice regarding the written statements made by Mr. Jones and Ms. Ramos-Aguirra, or the consequent advisability of signing the proposed Transition Agreement. This allegation states a plausible claim against Local 218 for processing Mr. Hampton's grievance in a perfunctory manner, i.e., without concern or solicitude.

Mr. Hampton's allegations further state a plausible claim of "discriminatory" conduct by Local 218. A union's discriminatory conduct violates its duty of fair representation if it is "invidious."  Schwartz, 264 F.3d at 1185.  "Discrimination is

invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories. . . ." <u>Schwartz</u>, 264 F.3d at 1186. As discussed below, in regard to his claim under 42 U.S.C. § 1981, Mr. Hampton's allegations state a plausible claim of racially discriminatory conduct by Local 218.

Finally, Mr. Hamptons allegations further state a plausible claim of conduct "in bad faith" by Local 218. A union's duty of fair representation is "akin to the duty owed by other fiduciaries to their beneficiaries." <u>Aguinaga</u>, 993 F.2d at 1471, quoting <u>Airline Pilot's Ass'n Int'l</u>, 499 U.S. at 74. In the latter case, the United States Supreme Court went on to explain: "Just as these fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." 499 U.S. at 75, citing the <u>Restatement (Second) of Trusts</u> § 174. According to the <u>Restatement (Second) of Trusts</u> § 170(2), a trustee is under a duty to his beneficiary "to deal fairly with him and <u>to communicate to him all</u> <u>material facts</u> in connection with the transaction which the trustee knows or should know." Emphasis added. See also § 173, Comment d.

Here, once again, Mr. Hampton alleges that Local 218 gave him no evidence regarding the written statements made by Mr. Jones and Ms. Ramos-Aguirra, or the consequent advisability of signing the Transition Agreement. This allegation states a plausible claim against Local 218 of conduct in bad faith,

because Local 218 owed Mr. Hampton a fiduciary duty to communicate to him all material facts of which Local 218 had knowledge.

### B.  Damage Caused By Local 218's Breach of Its Duty Of Fair Representation

In regard to the element of causation, this court has explained:

> The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedure; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract.

Webb, 155 F.3d at 1242, quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567 (1976).

Here, Mr. Hampton has alleged that Local 218's "breach of its duty of fair representation seriously undermined the integrity of the grievance procedure and the arbitral process. If the Union had not breached its duty of fair representation, Mr. Hampton would have agreed to sign the Transition Agreement which had been offered to him by Frito-Lay."  (Aplt. App. at 17, ¶ 38)  This allegation states a plausible claim showing the causal connection between Local 218's breach of its duty of fair representation and the serious undermining of the integrity of the grievance procedure.

### C.  Violation Of The Collective Bargaining Agreement By Frito-Lay

The third element of Mr. Hampton's claim against Local 218 for breach of its duty of fair representation consists of a violation of the collective bargaining agreement by Frito-Lay. Webb, 155 F.3d at 1239. Mr. Hampton alleges that

Article 3 of the collective bargaining agreement prohibits discrimination on the basis of race by both Frito-Lay and Local 218. (Aplt. App. at 10, ¶ 14)  Mr. Hampton further alleges that he filed a lawsuit against Frito-Lay for race discrimination arising out of his employment, and that he ultimately settled his claims of race discrimination against Frito-Lay.  (Aplt. App. at 15-16, ¶¶ 33, 35). These ultimate allegations, coupled with other allegations in the complaint, state a plausible claim of race discrimination by Frito-Lay, consisting of race discrimination in two forms.

The first form of race discrimination by Frito-Lay consists of a hostile work environment.  Mr. Hampton alleges that during Mr. Kistler's frequent visits to the office of the Receiving Department, Mr. Kistler expressed offensive and inflammatory comments and opinions to Mr. Hampton, including comments and opinions about race.  (Aplt. App. at 8)  Mr. Hampton further alleges that "[t]he comments and opinions expressed by Mr. Kistler created a racially intimidating, hostile, and offensive work environment for Mr. Hampton."  (Aplt. App. at 8)

These allegations are sufficient to state a plausible claim of race discrimination by Frito-Lay because, as will be explained in detail below, these allegations are sufficient to state a prima facie case for a hostile work environment claim.  The elements of a prima facie case of a hostile work environment are:  (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on race; and (4) due to the harassment's severity or pervasiveness, the

harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.  Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015).

The second form of race discrimination by Frito-Lay consists of retaliation for reporting a hostile work environment. Mr. Hampton alleges that he told Mr. Kistler's managers about Mr. Kistler 's unwelcome visits to the Receiving office. (Aplt. App. at 9)   Mr. Hampton further alleges that he prepared a written "Statement of Events," which described the history of Mr. Kistler's unwelcome visits to the Receiving office.  (Aplt. App. at 9)  Mr. Hampton also alleges that on October 6, 2018, he delivered copies of his written statement to his direct supervisor, Mr. McGivern, and to the Human Resources Director at the Topeka plant.  (Aplt. App. at 9)  Finally, Mr. Hampton alleges that on October 12, 2018, Mr. McGivern suspended him from employment, without pay, pending an investigation, which ultimately led to his termination.  (Aplt. App. at 10-11)

These allegations are sufficient to state a plausible claim of race discrimination by Frito-Lay because, as will be explained in detail below, these allegations are sufficient to state a prima facie case for a retaliation claim. The elements of a prima facie case of retaliation are:  (1) the plaintiff engaged in protected opposition to discrimination; (2) the plaintiff was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action.  Foster v. Mt. Coal Co., LLC, 830

F.3d 1178, 1186-87 (10th Cir. 2016); Anderson v. Coors Brewing Co., 181 F.3d
1171, 1178 (10th Cir. 1999).

In summary, Mr. Hampton's complaint states a plausible claim of breach of
the collective bargaining agreement by Frito-Lay, i.e. race discrimination,
because "under Rule 8, 'specific facts are not necessary; the statement need
only "give the defendant fair notice of what the . . . claim is and the grounds upon
which it rests.'" Kahlik, 671 F.3d at 1192.

## II.  Mr. Hampton's Complaint States A Facially Plausible Claim Against Local 218 For Race Discrimination In Violation of § 1981

Mr. Hampton's claim for race discrimination under 42 U.S.C. § 1981, arises
out of Local 218's breach of its duty of fair representation.  (Aplt. App. at 17, ¶
41)  In order to state a viable claim for this form of race discrimination, Mr.
Hampton must plausibly allege three elements:   (1) he is a member of a
protected class; (2) Local 218 had the intent to discriminate against him on the
basis of race; and (3) Local 218's discrimination against him interfered with a
protected activity as defined in § 1981.  Jara v. Standard Parking, 701 Fed. Appx.
733, 736 (10th Cir. 2017), citing Barlow v. C.R. England, Inc., 703 F.3d 497, 505
(10th Cir. 2012); and Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101-
02 (10th Cir. 2001).

As to the first element of his § 1981claim, Mr. Hampton alleges that he is a
member of a protected class, i.e. African American.  (Aplt. App. at 8, ¶ 4)

As to the third element of his § 1981 claim, Mr. Hampton alleges that Local 218 discriminated against him by failing to reasonably advise him that the written statements by both Mr. Jones and Ms. Ramos-Aguirra supported Mr. Kistler's allegation that on October 5, 2018, Mr. Hampton had used profanity toward him, and had made physical contact with him.  (Aplt. App. at 17, ¶ 41)  Mr. Hampton further alleges that Local 218's discriminatory conduct "caused him to decline to sign the Transition Agreement which had been offered to him by Frito-Lay." (Aplt. App. at 17, ¶ 41)  These allegations state a plausible claim for "the actual loss of a contract interest."  Hampton, 247 F.3d at 1104.

The district court did not find fault with Mr. Hampton's allegations as to the first and third elements of his § 1981 claim. Rather, the district court focused on the second element of Mr. Hampton's § 1981 claim, and concluded that Mr. Hampton has failed to allege sufficient facts to suggest that his race was the but-for cause of his injury. The district court concluded:

> Hampton has not plausibly alleged but-for causation. Other than stating that he is African American, the complaint is devoid of factual allegations that the Union treated Hampton differently from similarly situated employees based on his race. Indeed, the only time race is mentioned in conjunction with Union conduct is where Hampton conclusively recites his claim. . . .  Bald claims of race discrimination, without factual support, are not enough.

(Aplt. App. at 67)

This conclusion is erroneous because the district court failed to fully consider the context of Mr. Hampton allegations regarding race discrimination by

Local 218. As discussed above (p. 15), this court has emphasized that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  Kahlik, 671 F.3d at 1191.  Here, the context of Mr. Hampton's race discrimination claim under § 1981 is that Mr. Hampton is relying on indirect evidence of race discrimination, and therefore he is employing the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

### A.  The McDonnell Douglas Burden-Shifting Framework

In Kendrick v. Penske Transp. Servs., 220 F.3d 1220, 1225-26 (10th Cir. 2000), this court explained the McDonnell Douglas burden-shifting framework in this way:

> A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g. oral or written statements on the part of a defendant showing a discriminatory motive) or indirect (i.e. circumstantial) evidence of discrimination. . . .
>
> The Supreme Court set forth the framework for assessing circumstantial evidence of discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). . . .
>
> Under the McDonnell Douglas framework, the plaintiff 'must carry the initial burden under the statute of establishing a prima facie case of discrimination.' McDonnell Douglas, 411 U.S. at 802.  Once the plaintiff has established a prima facie case, 'the burden then must shift to the [defendant] to articulate some legitimate, nondiscriminatory reason' for its . . . action. See id. at 802.  If the defendant makes this showing, the

plaintiff must then show that the defendant's justification is pretextual.  <u>See id</u>. at 804.

In regard to the first stage of the <u>McDonnell Douglas</u> framework, this court has emphasized:

> 'The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse . . . action occurred under circumstances which give rise to an inference of unlawful discrimination.'

<u>Barlow v. C.R. Eng., Inc.</u>, 703 F.3d 497, 505 (10th Cir. 2012), quoting <u>Plotke v. White</u>, 405 F.3d 1092, 1100 (10th Cir. 2005).  See also <u>Kendrick</u>, 220 F.3d at 1227.

In <u>Barlow</u>, this court further enumerated a variety of circumstances which can give rise to an inference of unlawful discrimination, such as "actions or remarks made by decisionmakers"; "preferential treatment given to employees outside the protected class"; or "more generally, upon the timing or sequence of events leading to plaintiff's termination."  703 F.3d at 505, quoting <u>Plotke</u>, 405 F.3d at 1101.

In <u>Sorbo v. UPS</u>, 432 F.2d 1169 (10th Cir. 2005), this court further pointed out that showing preferential treatment given to employees outside the protected class is only <u>one</u> way of proving a prima facie case, saying:

> [S]uch proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case.

432 F.3d at 1173, citing <u>Plotke</u>, 405 F.3d at 1101; and <u>Hysten v. Burlington N. & Santa Fe Ry. Co.</u>, 296 F.3d 1177, 1181 (10th Cir. 2002).

When the <u>McDonnell Douglas</u> burden-shifting framework is applied in the context of a motion to dismiss under Rule 12(b)(6), where no answer has been filed, the plaintiff only needs to establish a prima facie case of unlawful discrimination. In other words, if the plaintiff establishes a prima facie case of unlawful discrimination, then logically and necessarily he or she has also established a claim of unlawful discrimination which is "plausible on its face." <u>Ashcroft</u>, 556 U.S. at 678.

This is so because where no answer has been filed, the second stage of the burden-shifting framework has not yet been reached, namely, when the defendant must "articulate some legitimate, nondiscriminatory reason for its . . . action." <u>Kendrick</u>, 220 F.3d at 1226.  In the present case, for example, Local 218 has not yet filed an answer, and therefore it has not yet articulated a nondiscriminatory reason for failing to advise Mr. Hampton that the written statements of both Mr. Jones and Ms. Ramos-Aguirra supported Mr. Kistler's version of his confrontation with Mr. Hampton on October 5, 2018.

## B.  <u>Mr. Hampton's Prima Facie Case Of Race Discrimination Against Local 218</u>

Mr. Hampton has established a prima facie case of race discrimination against Local 218 by demonstrating that the adverse actions taken by Local 218 "occurred under circumstances which give rise to an inference of unlawful discrimination." <u>Barlow</u>, 703 F.3d at 505.  Specifically, Mr. Hampton relies "upon

the timing or sequence of events leading to" the adverse actions taken by Local 218.  Barlow, 703 F.3d at 505.

This sequence of events began with Mr. Hampton's suspension from employment by Frito-Lay on October 12, 2018, arising out of the incident between Mr. Hampton and Mr. Kistler on October 5, 2018. (Aplt. App. at 10)  This sequence of events continued with the investigation of the October 5 incident by the HR Department, which included obtaining written statements from Mr. Jones and Ms. Ramos-Aguirra.  (Aplt. App. at 11-12)

This sequence of events further continued with the offer of the proposed Transition Agreement by Frito-Lay to Mr. Hampton, and the request by Local 218 for information from Frito-Lay.  (Aplt. App. at 12-13)  This sequence of events further continued with Frito-Lay's response on November 13, 2018, to Local 218's request for information, which included the written statements by Mr. Jones and Ms. Ramos-Aguirra. These written statements supported Mr. Kistler's contention that on October 5, Mr. Hampton had used profanity toward him, and had made physical contact with him.  (Aplt. App. at 13)

This sequence of events culminated in the adverse actions taken by Local 218 against Mr. Hampton, namely, giving him no advice regarding the statements made by Mr. Jones and Ms. Ramos-Aguirra, or the consequent advisability of signing the proposed Transition Agreement.  (Aplt. App. at 13-14)  At the present stage of this litigation, Local 218 has not provided any explanation for why it failed to give any advice to Mr. Hampton regarding the statements made by Mr.

Jones and Ms. Ramos-Aguirra, or the consequent advisability of signing the proposed Transition Agreement.  In light of Local 218's fiduciary duty to give such advice to Mr. Hampton, the lack of explanation by Local 218 for its adverse actions plausibly gives rise to an inference of racial discrimination.  "The burden of establishing a prima facie case . . . is not onerous."  Plotke, 405 F.3d at 1099, quoting McCowan v. All Star Maint., Inc., 273 F.3d 917, 922 (10th Cir. 2001).

## CONCLUSION

For the reasons discussed above, Mr. Hampton's complaint states facially plausible claims against Local 218 for breach of the duty of fair representation, and for race discrimination in violation of § 1981.  This is so, again, because the complaint "give[s] the defendant fair notice of what the . . . [claims are] and the grounds upon which [they] rest."  Kahlik, 671 F.3d at 1192.  Accordingly, the dismissal of both of Mr. Hampton's claims against Local 218 must be reversed, and the case remanded to the district court for further proceedings.

## CERTIFICATE OF COMPLIANCE WITH RULE 32

Pursuant to Fed. R. App. Pro. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 8,602 words.  I relied on my word processor to obtain this count, and it is Microsoft Word Office 365.

## CERTIFICATE OF DIGITAL SUBMISSION

No privacy redactions were necessary in this document.  The document submitted in digital form is an exact copy of the written document filed with the Clerk.  The document is a native PDF document.  The digital submission has

been scanned for viruses with the most recent version of a commercial virus scanning program, Symantec Endpoint Protection - Antivirus and Antispyware Protection Program, most recently updated January 31, 2022, and, according to the program, is free of viruses.

## ORAL ARGUMENT

Oral argument is not requested in this case because the issues are straight forward, and oral argument would not likely aid this court in analyzing the issues.

  s/Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman,
  McEntire & Jarboe, L.L.C.
534 s. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone   (785) 357-6311
Fax          (785) 357-0152
ajohnson@sloanlawfirm.com

## CERTIFICATE OF SERVICE

I herby certify that on the 3rd day of February, 2022, I delivered a copy of the foregoing document via electronic mail to the following parties:

Michael E. Amash
Samantha L. Groark
753 State Avenue, Suite 475
Kansas City, Kansas  66101
mea@blake-uligh.com
slg@glake-uligh.com
ATTORNEYS FOR DEFENDANT

  s/Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman,
  McEntire & Jarboe, L.L.C.
534 s. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone   (785) 357-6311
Fax           (785) 357-0152
ajohnson@sloanlawfirm.com

# A P P E N D I X

In the United States District Court
for the District of Kansas

Case No. 21-cv-02010-TC-TJJ

ANTHONY J. HAMPTON,

*Plaintiff*

v.

BAKERY, CONFECTIONARY & TOBACCO WORKERS AND GRAIN MIL-
LERS INTERNATIONAL UNION OF AMERICA, LOCAL 218, AFL-CIO,

*Defendant*

## MEMORANDUM AND ORDER

Plaintiff Anthony J. Hampton sued his former union, Bakery, Con-
fectionary & Tobacco Workers and Grain Millers International Union
of America, Local 218, AFL-CIO, for breaching its duty of fair repre-
sentation under 29 U.S.C. § 185 and for discrimination under 42 U.S.C.
§ 1981. Doc. 1. The Union moved to dismiss both claims for failure to
state a claim under Fed. R. Civ. P. 12(b)(6). Docs. 4 & 5. The motion
is granted for the following reasons.

I

A

To survive a motion to dismiss for failure to state a claim, the com-
plaint need only contain "a short and plain statement of the claim
showing that the pleader is entitled to relief" from each named defend-
ant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007). The Tenth Circuit has summarized two "working principles"
that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d
1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–
79 (2009). First, the Court ignores legal conclusions, labels, and any
formulaic recitation of the elements. *Kan. Penn Gaming*, 656 F.3d at
1214. Second, the Court accepts as true all remaining allegations and

logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to the claimant must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

### B

Anthony Hampton was a production employee for Frito-Lay in Topeka, Kansas, for over eight years. Doc. 1 at ¶ 4. He is African American. *Id.* After an October 2018 workplace dispute with a coworker, Frito-Lay suspended and, later, terminated Hampton's employment. *Id.* at ¶¶ 12, 26.

This case centers on that dispute. According to Hampton, another Frito-Lay employee from a different department, George Kistler, frequently made unwelcome visits to Hampton during work. Doc. 1 at ¶¶ 6–7. In those visits, Kistler "expressed offensive and inflammatory comments and opinions" to Hampton. *Id.* at ¶ 8. Hampton claims that this behavior created a racially intimidating, hostile, and offensive work environment. *Id.* One such visit escalated to the point that Frito-Lay's human resources department got involved. *Id.* at ¶¶ 9–11. A week after that incident, Frito-Lay suspended Hampton without pay and launched an investigation. *Id.* at ¶ 12.

During its investigation, Frito-Lay interviewed both Hampton and Kistler. Doc. 1 at ¶¶ 18–19. Hampton said that he merely asked Kistler

to leave. *Id.* at ¶ 9. But Kistler told a Frito-Lay investigator that Hampton "used profanity toward him" and "made physical contact with him." *Id.* at ¶ 18. Two coworkers supported Kistler's version in written statements. *Id.* at ¶¶ 19–20. Based on the coworkers' statements and Kistler's, Frito-Lay determined that Hampton had violated the company's policy against workplace violence. *Id.* at ¶ 20.

On November 1, 2018, Frito-Lay (through the Union, with whom it had a collective bargaining agreement) offered Hampton a severance agreement. Doc. 1 at ¶ 22. The offer did not mention the coworkers' statements in support of Kistler's story. Under the agreement, Hampton would not need to return to work and would retain employee benefits and eligibility for pension benefits. *Id.*

Meanwhile, the Union investigated the grievance Hampton filed with Frito-Lay over his suspension. *Id.* at ¶ 12. Two weeks after offering the severance agreement, Frito-Lay responded to the Union's request for information. *Id.* at ¶ 24. The response included the coworkers' statements. *Id.* The Union did not share what it had learned with Hampton. Nor did the Union advise Hampton on whether he should sign the severance agreement. Doc. 10 at 13–14; *see also* Doc. 1 at ¶¶ 12, 18–25. Ultimately, Hampton declined to sign the agreement. He was soon terminated for violating the Frito-Lay's Topeka Plant Work Rules. *Id.* at ¶¶ 25–26. Hampton now claims that had the Union informed him about the coworkers' statements or advised him to sign the severance agreement, he would have signed it and would still have access to his pension. Doc. 1 at ¶¶ 25, 35.

Shortly after his termination, Hampton filed another grievance with Frito-Lay. Doc. 1 at ¶ 27. Hampton, Union representatives, and Frito-Lay's plant processing manager met to discuss the grievance. *Id.* at ¶ 28. A month later, Frito-Lay denied his grievance. *Id.* at ¶ 29. The denial letter stated that "there were no subsequent findings to overturn the termination." *Id.*

Hampton then turned to the courts. Before this current suit, he sued Frito-Lay and Kistler, alleging racial discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Doc. 1 at ¶ 33. During discovery in that suit, Hampton first learned of the coworkers' statements that supported Kistler's story. *Id.* at ¶ 34. The parties settled. *Id.* at ¶ 35.

Appellate Case: 21-3218     Document: 010110640860     Date Filed: 02/03/2022     Page: 42

Now, Hampton's current suit seeks recovery from the Union in its capacity as his representative. Doc. 1 at ¶¶ 4–5, 13, 22. Hampton contends that the Union failed to provide him with critical information relevant to his decision to sign the severance agreement: the details of Frito-Lay's investigation and the corroborating statements. *Id.*

Hampton asserts two legal theories. In Count I, Hampton claims that the Union breached its duty of fair representation by acting in bad faith and in an arbitrary and racially discriminatory manner. *Id.* at ¶ 37. While the Complaint does not expressly cite any provision or body of law, the parties' briefing relies on a series of labor-relations cases applying 29 U.S.C. § 185. Doc. 10 at 3–4; *see DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163–64 (1983); *Vaca v. Sipes,* 386 U.S. 171, 177 (1967). In Count II, Hampton claims that the Union engaged in racial discrimination in violation of 42 U.S.C. § 1981 because it impaired his right to make and enforce a contract: the severance agreement.

The Union moved to dismiss both claims. Doc. 4. For the duty of fair representation claim, the Union argues that a six-month statute of limitations bars the claim. Doc. 5 at 17–20. Alternatively, the Union argues that Hampton failed to show that the Union acted with bad faith or in an arbitrary manner. *Id.* at 20–24. As to racial discrimination, the Union argues that Hampton has failed to show an intent to discriminate or that any discrimination interfered with his right to make or enforce a contract. *Id.* at 14–16.

## II

For both counts, Hampton's Complaint lacks sufficient facts showing that he is entitled to relief. As a result, the Union's Motion to Dismiss both counts for failure to state a claim is granted.

## A

A union has a duty of fair representation when representing its members in a grievance or arbitration procedure. *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163–64 (1983) (noting that the duty is implied under the National Labor Relations Act). A union breaches its duty of fair representation when it acts in a "discriminatory, dishonest, arbitrary, or perfunctory" way when representing an employee in a grievance or arbitration procedure. *Id.* at 1239 (citing *Int'l Brotherhood of Elec. Workers v. Hechler,* 481 U.S. 851, 864 n.6 (1987)).

.

To prevail against a union on a fair representation claim, an employee must *also* show that his discharge was contrary to the collective bargaining agreement between the employer and union. *Id.* at 165. This element comes from 29 U.S.C. § 185 and is often called a "Section 301" action (from the corresponding section in the Labor Management Relations Act). A Section 301 action is essentially a breach of contract suit. *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998). Because of the dual nature of these fair representation suits—the Section 301 prong and the arbitrary/dishonest prong—they are sometimes called "hybrid" actions. *DelCostello*, 462 U.S. at 165. To state such a claim, a plaintiff must allege that (i) the union engaged in some conduct that constituted a breach of its duty of fair representation, (ii) there is a causal connection between the union's breach and the integrity of the grievance process, and (iii) the employer violated the collective bargaining agreement. *Webb*, 155 F.3d at 1238. Here, the Union claims that Hampton has not shown the first and third elements.[1]

1. The Complaint fails to state a claim that the Union breached its duty of fair representation. Hampton argues that the Union acted in bad faith and that its conduct was arbitrary and discriminatory. But his complaint alleges few facts about the Union's involvement in Hampton's grievance process with Frito-Lay. Doc. 5 at 20–24. Without additional facts, his claim rests on the Union's knowledge of the corroborating statements and its decision not to volunteer that information to Hampton and advise accordingly. This is not enough to suggest arbitrary, discriminatory, or bad-faith conduct.

First, Hampton fails to allege facts plausibly showing that the Union acted arbitrarily. Specifically, Hampton argues that the Union's silence regarding the coworker statements was arbitrary. Doc. 10 at 7. To be arbitrary, an action must be "so far outside of a wide range of

---

[1] Defendant also argues this claim is time-barred by the six-month statute of limitations for fair representation claims. Doc. 5 at 17–20; *see DelCostello*, 462 U.S. at 164–65. The clock begins when an employee knows of "the acts constituting the union's alleged violations." *Spaulding v. United Transp. Union*, 279 F.3d 901, 908 (10th Cir. 2002). The parties here disagree on when Hampton's claim accrued: when the Union failed to provide the information during the grievance process, Doc. 5 at 19, or when Hampton later received the information during his suit against Frito-Lay and Kistler, Doc. 1 at ¶ 34, Doc. 10 at 12. Resolving that issue is unnecessary because Hampton's claim fails as a matter of law on other grounds.

reasonableness . . . that it is wholly irrational." *Air Line Pilots Ass'n. v. O'Neill*, 499 U.S. 65, 78 (1991). Hampton has not pled other facts for his belief that the Union's lack of advice was wholly irrational. *See* Doc. 1 at ¶ 25. Instead, he argues that giving "no advice" is like giving irrational advice. Doc. 10 at 7. The Union concedes its conduct may have been "negligent and in poor judgment." Doc. 5 at 22–23. But "errors in judgment" and "mere negligence" are not enough to show a breach of the duty of fair representation." *Young v. United Auto. Workers Lab. Emp. & Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1996) (citations omitted).

Related to arbitrariness, Hampton argues that the Union acted in a perfunctory manner. Doc. 10 at 7–8. "Perfunctory," in this context, means "without concern or solicitude." *Webb*, 155 F.3d at 1240. It describes conduct that gives only "cursory," "apathetic," or "indifferent" attention. *Id.* Here, Hampton's only factual support is the Union's silence regarding the coworker statements. Doc. 10 at 8. This is not enough. *See Naughton v. Loc. 804 Union*, No. 18-2830, 2019 WL 1003054 (E.D.N.Y. Mar. 1, 2019) (holding union's failure to produce documents to employee was not a breach of the duty of representation because the failure was an internal issue between union and employee); *Weller v. AT&T Servs., Inc.*, No. 10-80480, 2011 WL 2215165 (S.D. Fla. June 7, 2011) ("The failure of a union to provide a plaintiff with *requested* documents does not rise to the level of a breach of the duty of fair representation." (emphasis added)). Furthermore, the Complaint does not allege that Hampton sought the investigation's details or the Union's advice on the severance agreement. The Complaint does allege, however, that the Union investigated Hampton's suspension, requested information from Frito-Lay, and represented Hampton even after it learned of evidence against him. Doc. 1 at ¶¶ 23, 28. That is not "arbitrarily ignor[ing] a meritorious grievance or process[ing] it in perfunctory fashion." *Webb*, 155 F.3d at 1239; *see also Young*, 95 F.3d at 996–97 (10th Cir. 1996) (affirming that defendant union did not act arbitrarily because it pursued plaintiff's grievance and arbitration and represented plaintiff fairly throughout the processes).

Second, Hampton has not adequately alleged that the Union's conduct was discriminatory. There are no facts suggesting that its representation was racially motivated or that Hampton was treated differently than similarly situated employees. *See Richardson v. Bakery, Confectionary & Tobacco Workers, Loc. No. 26*, 92 F.3d 1197 (10th Cir. 1996); *see also, e.g., Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1293 (D. Kan.

2003) (finding no discriminatory conduct where plaintiff did not allege similarly situated, non-minority members were treated more favorably). Hampton points to the Union's "lack of explanation" for not advising Hampton. Doc. 10 at 14. But no explanation is needed where Hampton has not established a prima facie case of discrimination. *Cf. Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999) (applying *McDonnell Douglas* burden-shifting framework). Hampton's only race-related fact is that he is African American. But nothing in the Complaint suggests that the Union had a racial motive or that Hampton was treated differently than similarly situated employees. Indeed, the Complaint provides no information about Kistler or the coworker witnesses' races or ethnicities, precluding a claim that the Union favored non-African Americans because of their race or ethnicity.

Finally, the Complaint fails to show that the Union acted in bad faith. To establish bad faith, plaintiffs must present evidence of fraud, deceitful action, or dishonesty. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992) (citing *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971)). Hampton argues that the Union acted in bad faith because its fiduciary duty required disclosure of all material facts of which it knew. Doc. 10 at 8–9 (citing *Air Line Pilots*, 499 U.S. at 75) and Restatement (Second) of Trusts § 170). "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Here, the Complaint lacks *any* allegations that the Union engaged in fraudulent, deceitful, or dishonest behavior. *Cf. Reid v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 479 F.2d 517, 519 (10th Cir. 1973) (affirming summary judgment for the union because there were "no facts establishing discrimination, fraud or dishonesty").

2. The Complaint also fails to plead the third element of a hybrid Section 301/fair representation action—that Frito-Lay breached the collective bargaining agreement when it discharged Hampton. The parties' briefs do not detail what would constitute a breach of the collective bargaining agreement. Hampton argues that it is enough that the collective bargaining agreement prohibited discrimination and that he sued Frito-Lay for racial discrimination. Doc. 1 at ¶¶ 14, 31, 33; Doc. 10 at 10. The Union argues that the Complaint is "entirely silent" about whether Frito-Lay breached the agreement. Doc. 5 at 24.

To state a plausible claim, Hampton needed to support his position with more than just general, conclusory allegations. *See Jara v. Standard*

*Parking*, 701 F. App'x 733, 737 (10th Cir. 2017) (affirming that a mere assertion that the employer "violated various provisions of the collective bargaining agreement" without supporting facts is insufficient to state a claim). He has not done so. Thus, Hampton's claim for breach of duty of fair representation is dismissed.

### B

Hampton's second claim alleges that the Union discriminated against him based on his race by impairing his right to contract in violation of 42 U.S.C. § 1981. Specifically, he points to the Union's failure to advise him that his coworkers' statements corroborated Kistler's story of the incident. As a result, Hampton argues, he declined to sign Frito-Lay's proposed severance agreement. Doc. 1 at ¶ 41.

Section 1981 prohibits discriminatory interference with an individual's right to make and enforce contracts. To bring a claim, a plaintiff must show that (i) he is a member of a protected class, (ii) the defendant intended to discriminate on the basis of race, and (iii) the alleged discrimination interfered with a protected activity. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001). A plaintiff bears the burden of alleging that "race was a but-for cause of its injury." *Comcast Corp.*, 140 S. Ct. at 1014. Thus, a complaint must plausibly allege facts that could meet this requirement. *Id.*

Hampton has not plausibly alleged but-for causation. Other than stating that he is African American, the Complaint is devoid of factual allegations that the Union treated Hampton differently from similarly situated employees based on his race. Indeed, the only time race is mentioned in conjunction with Union conduct is where Hampton conclusorily recites his claim. Doc. 1 at ¶ 41. Bald claims of race discrimination, without factual support, are not enough. *See Jara*, 701 F. App'x at 736 (affirming union member had not pled a § 1981 prima facie case where he alleged only that he believed the union's actions were race-based but provided no additional allegations to show discriminatory intent); *see also Watkins v. Genesh*, Case No. 19-2486, 2021 WL 1238270, at *3 (D. Kan. Apr. 2, 2021) (dismissing complaint that pled no factual allegations other than plaintiff's race); *Norwood v. United Parcel Serv., Inc.*, No. 19-2496, 2020 WL 5802078, at *16 (D. Kan. Sept. 29, 2020) (dismissing complaint that pled no factual allegations other than the race of plaintiff's relative).

Furthermore, the timing of events leading up to Hampton's termination does not suggest discriminatory intent. *Contra* Doc. 10 at 13–14. In particular, he points to the following sequence of events: his suspension after the incident with Kistler, the investigation in which the coworker statements were obtained, the severance offer, the Union's failure to apprise him of the corroborating statements, and the Union's failure to advise him to sign the severance. Doc. 10 at 13–14. It is true that the timing of events leading to an adverse action can provide indirect evidence of discriminatory intent for § 1981 actions. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (citing *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)). But timing alone is insufficient without some facts to suggest that the adverse action was racially motivated. *Cf. Plotke*, 405 F.3d at 1103–04 (noting conflicting evidence concerning the reasons for an adverse action *in addition to* conflicting evidence regarding the timing of the action supported a prima facie Title VII gender discrimination case). Because Hampton has not pled such factual support, his § 1981 claim fails.

### III

The Union's Motion to Dismiss for failure to state a claim is GRANTED. Hampton has not alleged sufficient facts in his complaint to demonstrate that he is entitled to relief under 29 U.S.C. § 185 or 42 U.S.C. § 1981.

It is so ordered.

Date: October 22, 2021                    s/ Toby Crouse
                                          Toby Crouse
                                          United States District Judge